# United States Court of Appeals
## For the First Circuit

No. 05-1818

DIÁLOGO, LLC and DIRECT MERCHANTS S.A., INC.,

Plaintiffs, Appellants,

v.

LILLIAN SANTIAGO-BAUZÁ and EL DIÁLOGO, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor,  U.S. District Judge]

Before

Boudin, Chief Judge,

Siler,[*] Senior Circuit Judge,

and Saris,[**] District Judge.

Seth W. Brewster with whom George P. Field, William C. Knowles and Verrill Dana LLP were on brief for appellants.
Keith A. Minoff with whom Robinson Donovan, P.C. was on brief for appellees.

September 16, 2005

---

[*]Of the Sixth Circuit, sitting by designation.

[**]Of the District of Massachusetts, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.**  This appeal from the denial of a preliminary injunction stems from an ill-fated business arrangement between plaintiff-appellant Direct Merchants S.A., Inc. ("DMSA") and defendant-appellee Lillian Santiago Bauzá ("Santiago") to publish a bilingual newspaper in Western Massachusetts. Certain of the facts are contested but what follows is the basic outline of events.

Santiago (through a corporation she formed with her husband and two other individuals) published a bilingual English-Spanish newspaper, named "Diálogo Bilingue," in Western Massachusetts from June 2003 to June 2004. That paper operated at a loss, and in June of 2004 she and DMSA (through its managing director, Gerry Pike) entered into discussions and on June 9, 2004 signed agreements to form the joint venture Diálogo, LLC, also a plaintiff-appellant in this law suit. Diálogo, LLC published a bilingual newspaper in Massachusetts, "El Diálogo," beginning in July 2004 and superintended by Santiago.

The first agreement between the parties, the "Venture Agreement" is a two-page agreement that sets out in broad strokes the parties' intention to form Diálogo, LLC. It appears from other documents that DMSA was intended to have a 51 percent interest and Santiago a 49 percent interest in the new venture. The Venture Agreement provides that "DMSA shall contribute the initial capital to launch the LLC in an amount that DMSA deems appropriate." The

Venture Agreement references the "Operating Agreement," the other controlling document.

The Operating Agreement provides a detailed description of the functioning of the company, the parties' duties, and, relevant to this dispute, includes a Schedule A on which it details the parties' capital contributions--$1 by Santiago, and $50,000 by DMSA. Section 4.1(i) of the Operating Agreement states "[e]ach Member has contributed or is deemed to have contributed to the capital of the Company the amount set forth opposite the Member's name on Schedule A attached hereto."

In late February or March 2005, Santiago notified Pike by letter that she was "clos[ing] the business effective immediately."[1] She then continued, and continues today, to publish "El Diálogo" through a new business incorporated on March 14, 2005--El Diálogo, LLC, also a defendant-appellee in this lawsuit. Both parties agree that the newspaper Santiago is currently publishing is the same as the newspaper the parties published together beginning in July 2004.

DMSA's position, in the present law suit initiated in federal district court on March 31, 2005, is that Santiago has absconded with their jointly owned business. DMSA's amended

_____

[1]The exact date of this letter is a matter of dispute. The letter is dated February 17, 2005, bears a postmark of February 25, 2005, and Pike claims not to have received it until early March. In any event, Santiago claims that DMSA's breach occurred much earlier, at some point in December or January.

complaint comprises sixteen counts including claims for trademark infringement, misappropriation of trade secrets, and breach of contract. In addition to other relief, DMSA sought a preliminary injunction preventing Santiago from using the title "El Diálogo," disclosing any proprietary information, or using the physical assets of Diálogo, LLC.

For her part, Santiago claims that DMSA breached the contract between the parties at some point prior to her letter dissolving the business, thus ending (in her view) her obligations to the business and under the agreements. She further claims that any trademark rights in "El Diálogo" are rightfully hers based on her first use of the mark "Diálogo" in June 2003 and the absence (in her view) of any transfer or assignment of the trademark to DMSA or Diálogo, LLC by the agreements or otherwise.

At the hearing on the motion for preliminary injunction, the district judge heard argument, considered the affidavits and depositions of the two main players, Pike and Santiago, and denied temporary relief. The judge ruled that DMSA had not met its burden of showing that the trademark "El Diálogo" was rightfully its property, finding that Santiago had been the first user of the "Diálogo" mark. Thus, said the judge, DMSA was not likely to

succeed on the merits of its trademark claim. There was little discussion of the state law claims.[2]

On this interlocutory appeal, permitted by statute, 28 U.S.C. § 1292(a)(1) (2000), DMSA's argument is that it was entitled to a preliminary injunction. Although the grant or denial of a preliminary injunction is often said to be reviewed for abuse of discretion, Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), a more complete statement is that issues of law are reviewed de novo, factual findings for clear error, and most other issues--procedure, balancing of factors, even law application--with varying degrees of deference depending upon the circumstances. Langlois v. Abington Housing Auth., 207 F.3d 43, 47 (1st Cir. 2000); Pub. Serv. Co. of New Hampshire v. Patch, 167 F.3d 15, 22 (1st Cir. 1998).

To obtain a preliminary injunction, the usual precondition is a showing by the movant of a probability that it will prevail on the merits when the case is tried. Ross-Simons, 102 F.3d at 16. There are exceptions, but only in unusual circumstances not present here. See Patch, 167 F.3d at 26-27. Even with a probability of success, the movant is also normally required to show irreparable injury absent an injunction, the

---

[2]It is unclear whether the state claims were the subject of more discussion at an earlier hearing in which the district judge denied a motion for a temporary restraining order. That transcript has not been supplied by DMSA.

preliminary injunction being an equitable remedy, see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 332-33 (1999); and the court also weighs the equities and any public interest considerations for or against the injunction. Ross-Simons, 102 F.3d at 15.

DMSA's first aim is to show a likelihood of success on the merits. It says that it is likely to prevail first on its state-law claims of misappropriation of the business (breach of contract, theft of trade secrets, and violation of fiduciary duty), and second under the Lanham Act on an infringement claim because of Santiago's use of the name "El Diálogo." 15 U.S.C. § 2235(a) (2000). DMSA also advances a third claim based on Mass. Gen. Laws ch. 93A (2002), which provides for multiple damages and attorneys' fees for certain classes of aggravated commercial wrongdoing.

Ordinarily a co-venturer who walks off with the business, which may well be what happened in this case, is likely to be civilly liable; but Santiago's main defense is that DMSA breached its own commitments by failing to make contributions required under the agreements already described. It might be debatable whether such a breach automatically entitles one side to seize the business, see Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 155-56 (D. Mass. 2001), but instead DMSA's present position is simply that it made all of the contributions required of it, through services and assets, even if not in cash.

-6-

The documents and background events are less easy to interpret than DMSA suggests; but even if we assumed de novo review (in the absence of any discussion of the state claims by the district court) and further assumed dubitante that DMSA might well prevail, the misappropriation claims look like ones for which remedies at law would be sufficient. Nor does DMSA explain why they would not be sufficient to address most of its claims; its irreparable injury claims relate to the Lanham Act and chapter 93A, which we will now address in turn.

DMSA's Lanham Act claim is that Diálogo, LLC owns the trademark "El Diálogo" and that Santiago's new company is misappropriating the mark for its newspaper. The district court found, at least on a preliminary basis, that Santiago would likely prevail by showing that she had earlier used the name "Diálogo Bilingue" for her own newspaper; she says that her earlier paper effectively utilized "Diálogo" as its trademark and that she never assigned that name to the new business--a view that the district court may have adopted (again, on a preliminary basis).

DMSA says that conflation of the two marks violates a so-called anti-dissection principle, Little Caesar Enters., Inc. v. Pizza Caesar, 834 F.2d 568, 571-72 (6th Cir. 1987), and that anyway Santiago "abandoned" the earlier trademark. However, DMSA's strongest argument is that, whatever the relationship between the two trademarks, Santiago implicitly brought to the new venture

whatever interest she had in the Diálogo name; the district court thought otherwise and provided an explanation. Anyway, even if there were a likelihood of success on this issue, there does not appear to be irreparable injury.

Although there is law to the effect that irreparable injury is presumed in infringement cases where the plaintiff shows a likelihood of success, e.g., American Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 3-4 (1st Cir. 1997), this case does not fit the mold. Irreparable--or at least unquantifiable--injury may be fairly likely where two businesses are vying for the same customers using the same trademark or two marks that can be confused with one another. There, every customer diverted to a defendant may be an undetectable loss, even a permanent one, to the plaintiff. Thus, a presumption of irreparable injury makes some sense.

This case is quite different. Here, from DMSA's own version of events, Santiago is conducting the Diálogo, LLC business under her new company's name and DMSA is publishing no similar newspaper. DMSA does not claim that Santiago is running the business into the ground; the question is whether a share of the profits (if any), and ultimately the business itself, should be restored to Diálogo, LLC. The kind of irreparable injury that ordinarily underpins the presumption is not present here; for all

we can tell, everyone will be better off with a continuation of the business by Santiago for the time being and a swift trial.

DMSA's final claim is that a chapter 93A violation is likely to be found and that chapter 93A does not require irreparable injury to obtain an injunction. According to DMSA, injunctive relief for such a violation is statutory and therefore exempt from the irreparable injury requirement. The only Massachusetts case we can find that makes such a statement involved interim relief sought by the Attorney General under the "public interest" standard and the court limited its approval to injunctions sought by the state. Commonwealth v. Mass. CRINC, 392 Mass. 79, 86 (1984).[3]

At least in private litigation, a preliminary injunction without a showing of irreparable injury would normally make little sense because at that stage the outcome is only a prediction and, in the face of uncertainty, coercive relief is generally a bad idea unless shown to be necessary. So far as we are aware, irreparable injury is regularly required for preliminary injunctions sought by private parties under chapter 93A, see Cablevision of Boston, Inc. v. Pub. Improvement Comm'n of the City of Boston, 184 F.3d 88, 106-

_____

[3]DMSA cites two cases of its own. The Massachusetts case involved permanent relief, arguably a quite different situation. Henderson v. Axiam, Inc., 1999 WL 33587312, *58 (Mass. Super. June 22, 1999). A Maine decision does speak more broadly in granting a preliminary injunction, but irreparable injury was in fact present. UV Industries, Inc. v. Posner, 466 F. Supp. 1251, 1255-56 (D. Me. 1979).

07 (1st Cir. 1999); Chapter 93A Rights and Remedies § 4-14 (MCLE 1989).

DMSA may well have viable claims against Santiago; nothing we have said is intended to suggest that the complaint is frivolous or without some promise.  What is clear to us is that the district court was entitled to deny preliminary relief.

Affirmed.