Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 06-2534

ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW,

Plaintiff, Appellant,

v.

TOWN OF EAST GREENWICH by and through its Town
Council Members, Michael B. Isaacs, John M. McGurk,
Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti
in their official capacities, its CHIEF OF POLICE
David Desjarlais in his official capacity and its FINANCE
DIRECTOR Thomas Mattos in his official capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Fusté,[*] District Judge.

Carolyn A. Mannis, for appellant.
John J. Cloherty, III, with whom Pierce, Davis & Perritano,
LLP, was on brief, for appellees.

June 27, 2007

---

[*] Of the District of Puerto Rico, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  The Association of Community Organizations for Reform Now ("ACORN") sued the Town of East Greenwich, Rhode Island (the "Town"), seeking an injunction to prohibit the Town from requiring parties who planned to engage in door-to-door solicitation of money to obtain a permit, and barring all solicitations of money from 7:00 P.M. until 9:00 P.M.[1]  After a one-day evidentiary hearing, the district court denied ACORN's request for a preliminary injunction.

The only issue before us is whether the district court abused its discretion in denying ACORN's request for a preliminary injunction, which is an interlocutory order.  See Diálogo, LLC v. Santiago-Bauzá, 425 F.3d 1, 3 (1st Cir. 2005).  A district court's decision whether to grant a preliminary injunction is guided by the consideration of four factors: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18

---

[1]  The Town's ordinance actually extends the prohibition on door-to-door soliciting until 9:00 A.M.  However, ACORN challenged the ordinance only inasmuch as it prohibited soliciting earlier than 9:00 P.M.

(1st Cir. 2006) (alteration in original) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 10-11 (1st Cir. 2004)).

We conclude that the district court did not abuse its discretion in denying the preliminary injunction. The factual record in this case is thin: the evidentiary hearing lasted only one day, and each side presented the testimony of only two witnesses. While we recognize that the quantum of evidence necessary to prevail on a motion for a preliminary injunction may vary, in this particular case, we conclude that the district court did not abuse its discretion in determining that the evidence was insufficient to show that ACORN would likely succeed on the merits. See Bl(a)ck Tea Soc'y, 378 F.3d at 14 ("[T]his is a close and difficult case. The district court, however, dealt with matters at first hand and concluded that the appellant had not shown a likelihood of success on the merits."). In reaching this conclusion, we do not endorse the reasoning of the district court, which appeared to reject ACORN's First Amendment claims on the merits. Cf. Asociación de Educación Privada de P.R., Inc. v. Echevarría-Vargas, 385 F.3d 81, 86 (1st Cir. 2004) (explaining that dismissal was inappropriate in light of "the absence of any evidence about the nature and weight of the burdens imposed and the nature and strength of the government's justifications"). On remand, the court would be assisted by further development of the

facts, both as to the justifications for the ordinance and the burdens it imposes.

The ordinance at issue in this case, by its own terms, applies only to door-to-door solicitation of funds; it does not appear to regulate canvassers who simply seek to advocate a position without seeking a donation. The Supreme Court's most recent decision on this issue recognized the "historical importance of door-to-door canvassing and pamphleteering as vehicles for the dissemination of ideas," but also noted that a state may have some interest in regulating such conduct, "particularly when the solicitation of money is involved." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton, 536 U.S. 150, 162 (2002). The Supreme Court expressly declined to elucidate a standard of review to be applied to restrictions that apply to door-to-door canvassing or solicitation, id. at 164, but subsequent decisions have suggested that the appropriate test might be one resembling intermediate scrutiny. See, e.g., Parks v. Finan, 385 F.3d 694, 703 (6th Cir. 2004) (requiring that a scheme requiring permits to hand out pamphlets at the state capitol must be "narrowly tailored to the government's interest"); SEIU, Local 3 v. Municipality of Mt. Lebanon, 446 F.3d 419, 425 (3d Cir. 2006) ("[T]o the extent that the ordinance 'is not tailored to the [municipality's] stated interest,' there is a commensurate reduction in the municipality's interest in its enforcement." (alteration in original) (quoting

<u>Watchtower</u>, 536 U.S. at 168)). Of course, the application of intermediate scrutiny is dependent on whether the challenged regulation is content-neutral, a fact that appears to be in dispute in this case. If the ordinance at issue is content-based, strict scrutiny would likely apply. <u>See</u> <u>Turner Broad. Sys.</u> v. <u>FCC</u>, 512 U.S. 622, 642 (1994) ("Our precedents . . . apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content.").

The Town argues that the challenged ordinance satisfies intermediate scrutiny because it helps to combat fraudulent solicitations, reduces overall crime rates, and protects residents' privacy. ACORN argues that the ordinance fails to meet intermediate scrutiny because it is not narrowly tailored to achieve these goals, and that in any case, it excessively burdens ACORN's ability to convey its message and solicit donations. Whether the challenged ordinance advances the town's interests or excessively burdens ACORN's ability to speak are questions that are heavily dependent on factual determinations, and are therefore difficult to answer at this stage in the litigation. At a minimum, the Town has offered sufficient evidence to call into question the plaintiff's likelihood of success on the merits.

We also note that there are issues that were not expressly presented to the district court in the motion for a preliminary injunction, but which may raise additional areas for

inquiry on remand. First, there may be discrepancies between what the ordinance says on its face and how it is applied. For example, there was testimony at the hearing that it ordinarily takes only two days to obtain a permit, which appears to be in conflict with the ordinance's requirement that a permit be applied for five days in advance of solicitation. Whilst the ordinance provides for a permit fee of $10 per day, testimony at the evidentiary hearing indicates that groups were charged a one-time fee of $10. These discrepancies may bear on the ultimate question of whether the ordinance is narrowly tailored to meet a legitimate state interest.

Second, there was some evidence presented that the permitting scheme was enforced in a discriminatory manner based on the identity of the speaker.[2] There was testimony that religious organizations may not need a permit even if they solicit donations. Furthermore, there was testimony that scouting and school organizations have never applied for a permit, although there was no testimony presented on whether such organizations had solicited without permits. These were not the primary bases for relief sought at the preliminary injunction hearing, and we leave it to

---

[2] We express no opinion at this time as to the argument that "solicitation speech," i.e., conveying a message that a donation is requested, can be distinguished from the actual act of solicitation, i.e., the conduct of receiving a monetary or in-kind donation. Cf. ISKCON of Potomac, Inc. v. Kennedy, 61 F.3d 949, 954 (D.C. Cir. 1995) (upholding a prohibition on solicitation in a park where the National Park Service interpreted solicitation "to include only an in-person request for immediate payment.").

-6-

ACORN to decide whether to press such issues on a motion for a permanent injunction.[3]

The issues in this case are difficult, and the Supreme Court has not provided clear guidance. Moreover, what guidance the Supreme Court has provided suggests that this particular scenario, of mixed political speech and solicitation of donations, is precisely the sort that may turn on factual issues. Under those circumstances, further facts should be developed before the constitutional issues can be resolved.

**Affirmed**.

---

[3] Cf. Association of Community Organizations for Reform Now, ("ACORN") v. Golden, 744 F.2d 739, 749 (10th Cir. 1984) ("Golden's ordinance, however, is not content neutral. The ordinance permits exemptions for organizations or individuals if the purpose of the solicitation is for a charitable, religious, patriotic or philanthropic purpose, or otherwise provides a service so necessary for the resident's general welfare that it does not constitute a nuisance. This approach contemplates a distinction based on content.").