PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Omni
National Bank, et al., Defendants.

Civil Action No. 1:12–CV–1103–RLV.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 4, 2013.

David Joel Marmins, Arnall Golden & Gregory, Joseph Matthew Maguire, Jr., Parks Chesin & Walbert, P.C., Atlanta, GA, Lewis K. Loss, Matthew J. Dendinger, Thompson, Loss & Judge, LLP, Washington, DC, for Plaintiff.

Carey L. Menasco, Elisabeth L. Baer, Erin L. Delatte, James A. Brown, Liskow & Lewis, PLC, New Orleans, LA, Jeanne Simkins Hollis, S. Paul Smith, Simkins Hollis Law Group, P.C., Atlanta, GA, George A. Koenig, Koenig Law Group, P.C., Andrew D. Horowitz, Drew Eckl & Farnham, Joseph C. Chancey, Drew Eckl & Farnham, Frank G. Podesta, Richard A. Rice, Jr., Bomar Rice, LLC, Ezra H. Cohen, Troutman Sanders, Atlanta, GA, William Thomas Lacy, Jr., Lacy & Snyder, LLP, Peachtree City, GA, for Defendants.

Stephen M. Klein, Marietta, GA, pro se.

Jules N. Greenblatt, Atlanta, GA, pro se.

Shannon C. Livengood, Marietta, GA, pro se.

## ORDER

ROBERT L. VINING, JR., Senior District Judge.

This matter is a declaratory judgment action brought by Progressive Casualty Insurance Company ("Progressive") seeking a declaration that the directors and officers/company liability policy issued by Progressive to Omni National Bank ("Omni" or the "Bank") does not afford coverage for claims asserted against certain named defendants in a related lawsuit filed by the Federal Deposit Insurance Company ("FDIC–R"). *See Fed. Deposit Ins. Co. v. Klein,* No. 1:12–cv–896 (N.D.Ga. filed Mar. 16, 2012) (the "FDIC–R receiver action").

This director and officer liability insurance coverage action arises out of a lawsuit brought by the FDIC–R, as receiver of Omni, against ten former directors, officers, and employees of the Bank ("Ds & Os"). There are several companion suits arising from the same set of facts that have been consolidated for pretrial purposes. The FDIC–R in the underlying suit, i.e., the FDIC–R receiver action, seeks to recover for the negligence and gross negligence of several former Ds & Os of Omni.

On March 27, 2009, the Office of the Controller of the Currency ("OCC") closed Omni and appointed the FDIC–R as receiver. The FDIC–R asserts claims against seven former Community Development Lending Division ("CDLD") officers

of Omni for negligence and gross negligence in approving certain loans on low-income residential properties (hereinafter, the "Loss Loans"). The complaint alleges that these CDLD officers approved the Loss Loans despite obvious violations of Omni's loan policies and procedures, banking regulations, and prudent lending practices. The FDIC–R also asserts claims against two former executives of Omni for negligence and gross negligence for failing to supervise the CDLD lending despite "obvious red flags." The FDIC–R asserts a few other claims as well. The FDIC–R claims that the loss to the federal Deposit Insurance Fund is estimated at $330.6 million as a result of certain failures at Omni.

### I. Parties' Positions

Progressive has moved for summary judgment in this declaratory judgment action as to some of its claims, arguing that no coverage is available under the D & O liability policy because (1) coverage is barred by the "insured versus insured exclusion" in the policy, (2) the FDIC–R seeks to recover financial losses that do not fall under the policy's definition of covered "loss," which includes the so-called "loan loss carve-out," and (3) the FDIC–R asserts some claims based on $12.6 million in "wasteful expenditures" on certain low-income Other Real Estate Owned ("OREO") properties that are based on wrongful acts that took place after the expiration of Progressive's D & O liability policy, which ended on June 9, 2008.

The FDIC–R responds to Progressive's instant motion for summary judgment by arguing, inter alia, that the motion is premature because certain provisions of the policy are ambiguous and the FDIC–R has not had a full opportunity to conduct discovery. The FDIC–R supports their opposition with an affidavit that identifies specific areas where the FDIC–R seeks discovery. Progressive contends that the

policy is unambiguous and, therefore, discovery is not warranted. Although the FDIC–R doesn't oppose Progressive's third argument related to negligence claims based on certain OREO expenditures, several other defendants oppose Progressive's motion.

### II. Discussion

■■■ In evaluating the terms of a contract, extrinsic evidence is admissible if a contract is ambiguous. As one court noted, "[a]n insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can be fairly made. When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Smith v. Cont'l Cas. Co.*, 616 F.Supp.2d 1286, 1296 (N.D.Ga.2007). The D & O liability policy defines "loss" as follows:

> Loss means Defense Costs and any amount which the Insured Persons or the Company are legally obligated to pay resulting from a Claim, including damages, judgments, settlements.... Loss shall not include ... (3) any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt.

(Policy § IV.N [Doc. No. 47–7].)

The policy also includes a typical D & O liability insurance provision known as the "insured versus insured" ("IvI") exclusion. The IvI exclusion states:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim by, on behalf of, or at the behest of the Company, any affiliate of the Company or any Insured Person in any capacity....

(Policy § V.J [Doc. No. 47–7].)

### A. Insured versus insured exclusion

■■■ Progressive contends that because the policy excludes loss in connection with

any claim "by, on behalf of, or at the behest of the Company," the IvI exclusion applies to the FDIC–R action to bar coverage because the FDIC–R "steps into the shoes" of Omni. Therefore, they argue, the FDIC–R's claims are "by" or "on behalf of" the failed bank. However, it is unclear whether the FDIC–R's claims are "by" or "on behalf of" the failed bank. Furthermore, it is unclear what exactly is encompassed by the phrase "steps into the shoes." These ambiguities arise, in part, because the FDIC–R differs from other receivers or conservators that might step into the shoes of a failed or insolvent bank. The FDIC–R is tasked, under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, with bringing claims to recover losses suffered by the federal Deposit Insurance Fund and a bank's depositors, creditors, and shareholders. *See* 12 U.S.C. §§ 1821(d)(2)(A)(i) & (d)(10)-(11); § 1823(d)(3)(A). The FDIC–R has multiple roles. Therefore, the FDIC–R has shown that some ambiguity exists in the insured versus insured exclusion.

### B. Loan loss carve-out

■ The FDIC–R has also shown that ambiguity exists in the definition of "loss" because the "loan loss carve-out" does not clearly exempt tortious conduct, which is the basis for the FDIC–R's claims in the underlying D & O liability action. And, although not dispositive, the FDIC–R points to coverage handbooks provided to Omni by Progressive that indicate that the value of charged-off loan losses are covered, not excluded.

### C. The FDIC–R's OREO losses claims

■ With regard to Progressive's third argument that coverage should be denied for certain OREO loss claims because the alleged wrongful acts occurred outside of the relevant policy period, the court concludes that Progressive is entitled to summary judgment for the reasons that follow.

Progressive argues that its policy, which ended on June 9, 2008, only covers claims resulting from wrongful acts that occurred prior to the effective date of cancellation, nonrenewal or conversion and are otherwise covered under the policy. Although the FDIC doesn't address this issue in its briefs, which were adopted by several of the individual defendants, at least one defendant argues that there are questions of fact as to whether the wrongful acts underlying the FDIC–R's OREO claim may have occurred during the policy period. However, this argument is unavailing because it attempts to rewrite the FDIC–R's complaint in the underlying receiver action, as discussed below.

Although Omni was alleged to have been dealing with OREO properties prior to September 15, 2008, the FDIC–R's complaint asserts some claims based on negligent acts pertaining to OREO investments that occurred after September 15, 2008, Specifically, the claims seek damages arising from OREO expenditures that occurred after September 15, 2008, i.e., the date that the OCC issued its report to Omni where it rated Omni a CAMELS 5.[1] For example, in paragraph 59 of the FDIC–R's complaint, the claim states:

As to Cohen, his negligent acts included, without limitation:

i.) failing to ensure that investments in OREO after September 15, 2008, were safe, sound, and reasonable, and that the Bank had a reasonable prospect of recouping its investment;

---

1. CAMELS is the rating system used to classify the overall condition of banks. A rating of

"5" represents critically deficient performance, i.e., bank failure is highly probable.

ii.) directing, authorizing, and/or permitting speculative, unsafe, unsound, and wasteful OREO expenditures after September 15, 2008, in violation of prudent banking practices and federal regulations.

(FDIC–R Receiver Action Complaint ¶ 59 [Doc. No. 47].) This claim doesn't fall within the policy period, which lapsed June 9, 2008, underwritten by Progressive because it is based on tortious conduct occurring after September 15, 2008.

According to Progressive, the policy does not provide coverage for claims resulting from wrongful acts that occurred after the effective date of cancellation, nonrenewal, or conversion, unless notice was given to Progressive during the policy period. With respect to notice of potential clams, the policy provides:

> If during the Policy Period, the Insured first becomes aware of circumstances which may give rise to a Claim, and gives written notice to the Insurer of the circumstances and reasons for anticipating a Claim, then any Claim subsequently made shall be deemed to have been first made during the Policy Year in which notice was first given to the Insurer.

(Policy § X.B [Doc. No. 47–2].)

As defined in the policy, the Policy Period ended on June 9, 2008. No claim was submitted to Progressive during the policy period. Therefore, the above-referenced section of the policy doesn't provide coverage for claims relating to wrongful acts that occurred *after* the effective date of cancellation, nonrenewal, or conversion.

However, the FDIC–R did send notice via a "demand letter" on June 8, 2009, after the expiration of the Policy Period but during the so-called "Discovery Period." Although Omni purchased an extended reporting period where Omni could provide notice of claims to Progressive even after the policy was not renewed, the Discovery Period didn't provide coverage for wrongful acts that occurred after June 9, 2008, the date the policy lapsed.

As mentioned, the D & O policy was not renewed and lapsed on June 9, 2008. Because the policy was not renewed, Omni was entitled to a 30–day Automatic Discovery Period under the terms of the policy. Omni also purchased a one-year optional extended reporting period, i.e., the Discovery Period. The Discovery Period ran from the expiration of the Automatic Discovery Period on July 9, 2008, to July 9, 2009. With respect to claims first made *after* the expiration of the Policy Period but during the Automatic Discovery Period or Discovery Period, the policy provides;

> The Automatic Discovery Period and the Discovery Period are not *an extension of coverage,* but rather an extended reporting period for Claims first made during the Automatic Discovery Period or the Discovery Period resulting from Wrongful Acts that occurred *prior* to the effective date of cancellation, nonrenewal or conversion and otherwise covered under this Policy.

(Policy § III.B (as amended by Endorsement Form No. 8790D (01/05) GA) [Doc. No. 47–2].)

In the underlying FDIC–R action, the complaint makes certain allegations of negligent acts pertaining to OREO investments that occurred after September, 15, 2008. Therefore, the policy doesn't cover claims where notice was given during the Discovery Period but related to wrongful acts that occurred after the effective date of nonrenewal.

For the reasons stated above, the plaintiff is entitled to summary judgment to the extent that Progressive moved to declare that the policy provides no coverage for aspects of the FDIC–R's claims relating to

negligent acts surrounding OREO expenditures that occurred after September 15, 2008. However, the court does not issue judgment on coverage of other claims relying on facts pertaining to OREO expenditures during the policy period. Additionally, the plaintiff is not entitled to summary judgment on its other two arguments related to the IvI exclusion and the loan loss carve-out. The defendants should be permitted to proceed in discovery into the areas identified in the Lana Robertson Declaration, attached as Exhibit A to the FDIC–R's opposition to summary judgment [Doc. No. 59]. This follows the court's recent order clarifying the extent of discovery in the consolidated cases.

### III.  Conclusion

Therefore, the court DENIES IN PART and GRANTS IN PART the plaintiff's motion for summary judgment [Doc. No. 47]. The court also considered the defendants' surreply because the surreply presented the court with a new decision or rule of law that bears on the issues before it. Therefore, the court GRANTS the defendants' motion to file a surreply nunc pro tunc [Doc. No. 76].