# United States Court of Appeals
## For the First Circuit

---

No. 12-2008

W HOLDING COMPANY, INC.; FRANK STIPES-GARCÍA; JUAN C. FRONTERA-GARCÍA; HÉCTOR DEL RÍO-TORRES; WILLIAM M. VIDAL-CARVAJAL; CÉSAR RUIZ; PEDRO R. DOMÍNGUEZ-ZAYAS,

Plaintiffs, Appellees,

---

LUÍS BARTOLOMÉ RIVERA CUEBAS, as Trustee of the Socio Cultural Conservation Trust,

Plaintiff,

v.

AIG INSURANCE COMPANY — PUERTO RICO,

Defendant, Appellant.

---

MARLENE CRUZ-CABALLERO; CONJUGAL PARTNERSHIP FRONTERA-CRUZ; LILLIAM DÍAZ-CABASSA; CONJUGAL PARTNERSHIP RÍO-DÍAZ; GLADYS BARLETTA-SEGARRA; CONJUGAL PARTNERSHIP VIDAL-BARLETTA; HANNALORE SCHMIDT-MICHELS; CONJUGAL PARTNERSHIP RUIZ-SCHMIDT; SONIA SOTOMAYOR-VICENTY; CONJUGAL PARTNERSHIP DOMÍNGUEZ-SOTOMAYOR; JOSÉ M. BIAGGI-LANDRÓN; JANE DOE; CONJUGAL PARTNERSHIP BIAGGI-DOE; MIGUEL A. VÁZQUEZ-SEIJO; SHARON MCDOWELL-NIXON; CINDY M. COSTAS SANTIAGO; CONJUGAL PARTNERSHIP VÁZQUEZ-MCDOWELL,

Defendants, Appellees.

RICARDO CORTINA-CRUZ; CONJUGAL PARTNERSHIP CORTINA-ALDEBOL; ELIZABETH ALDEBOL DE CORTINA; JULIA FUENTES DEL COLLADO; MARIO A. RAMÍREZ-MATOS; CORNELIUS TAMBOER; OLGA MORALES-PÉREZ; CONJUGAL PARTNERSHIP TAMBOER-MORALES; JANE DOE, as Trustee for the Domínguez Sotomayor Family Trust; JOHN DOE, as Trustee for the Domínguez Sotomayor Family Trust; CARLOS GONZÁLEZ ALONSO; XL SPECIALTY INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; ACE INSURANCE COMPANY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

---

Before

Thompson, Baldock,[*] and Lipez,
Circuit Judges.

---

Melissa A. Murphy-Petros, with whom James K. Thurston and
Wilson Elser Moskowitz Edelman & Dicker LLP, and Luis N. Saldaña,
Fernando Sabater-Clavell, and Carvajal & Vélez-Rivé, P.S.C. were on
brief, for appellant.
Andrés Rivero, with whom Alan H. Rolnick, Charles E. Whorton,
M. Paula Aquila, and Rivero Mestre LLP were on brief, for
appellees.
Colleen J. Boles, Assistant General Counsel, Lawrence H.
Richmond, Senior Counsel, and Jaclyn C. Taner, Federal Deposit
Insurance Corporation, and John A. Gibbons, Andrew M. Reidy,
Catherine J. Serafin, and Dickstein Shapiro LLP, on brief for
amicus curiae Federal Deposit Insurance Corporation in support of
appellees.

---

March 31, 2014

---

[*] Of the Tenth Circuit, sitting by designation.

**THOMPSON, <u>Circuit Judge</u>.**

## PREFACE

In today's case (more procedurally complicated than substantively complex), a district judge issued an order requiring Chartis Insurance Company to advance defense costs to former directors and officers of Westernbank of Puerto Rico, who find themselves in the cross-hairs of the Federal Deposit Insurance Corporation ("FDIC," for easy reading).[1] Chartis appeals. And after confirming our jurisdiction, we affirm.

## HOW THE CASE GOT HERE

Westernbank's run as one of Puerto Rico's leading banks came to an end in the late 2000s when local regulators ordered it closed and appointed a federal regulator — the FDIC — receiver. Jumping in with gusto, the FDIC investigated what had gone on there. And it did not like what it found. Certain bank directors and officers had breached their "fiduciary duty" by jeopardizing the bank's financial soundness, the FDIC claimed in a letter sent to (among others) the directors and officers and their insurer, Chartis. Concluding that these breaches had caused more than $367 million in losses to the bank, the FDIC demanded that the directors and officers pay that amount.

_____

[1] Chartis is now known as AIG Insurance Company. But we will continue to refer to Chartis throughout this opinion, just like the parties do in their briefs. Also, anyone interested in knowing the directors' and officers' names should check out our case caption.

Without missing a beat, the directors and officers notified Chartis of the FDIC's multimillion-dollar claim. And, naturally, they asked Chartis to confirm coverage under a directors' and officers' liability-insurance policy issued by Chartis to Westernbank's owner, W Holding Company, Inc. Known in the insurance world as a "D&O" policy, this particular policy declares (in capital letters) that Chartis "must advance defense costs, excess of the applicable retention, pursuant to the terms herein prior to the final disposition of a claim." The policy's advancement provision (emphasis ours) repeats further on that Chartis "shall advance, excess of any applicable retention amount, covered Defense Costs." "Defense Costs" include "reasonable and necessary fees, costs and expenses consented to by the Insurer." The policy says, too, that Chartis shall pay for certain "Loss[es] of an Organization arising from a Claim made against an Insured Person for any Wrongful Act of such Insured Person." "Loss[es]" include defense costs. "Organization" includes the "Named Entity," which is W Holding, plus its "Subsidiar[ies]," which include Westernbank. And "Insured Person[s]" include directors and officers.

Chartis denied coverage five months later, relying (most pertinently) on the policy's "insured versus insured" exclusion. A standard proviso in D&O policies, this exclusion says that Chartis

> shall not be liable to make any payment for
> Loss in connection with any Claim made against
> an Insured . . . which is brought by, on
> behalf of or in the right of, an Organization
> or any Insured Person other than an Employee
> of an Organization, in any respect and whether
> or not collusive.

"Claim," the policy adds, includes "a written demand" for money. "Insured" means "Insured Person" or "Organization." And, again, the directors and officers come within the policy's definition of "Insured Person[s]," while W Holding and Westernbank fall within the policy's definition of "Organization." Also, the policy neither mentions the FDIC nor bars coverage for suits by FDIC-type regulators like some policies do.[2]

Convinced that the FDIC, "[a]s receiver," had stepped squarely into Westernbank's "shoes," Chartis also wrote that any claims that the FDIC had "against the directors and officers of Westernbank are 'on behalf of' or 'in the right of' Westernbank." That triggered the insured-versus-insured exclusion, the FDIC added, which meant no coverage. The directors and officers were

---

[2] The policy does discuss claims brought by "governmental regulators" in a "Securities Claims Exclusion" — but (broadly speaking) only in the context of claims arising from "the purchase or sale, or offer or solicitation of an offer to purchase or sell[,] any security of the Organization." Contrastingly, Chartis apparently sells a "Broad Form" (which the judge judicially noticed) that expressly excludes coverage for claims "brought by or on behalf of . . . any State or Federal regulatory or administrative agency . . . in its capacity as receiver, conservator, liquidator, securities holder or assignee of" the bank's "depositors or creditors." Again, that exclusion is not part of this policy.

-5-

not willing to take this lying down, however. Together with W Holding, they sued Chartis in Puerto Rico superior court, seeking a declaratory judgment of coverage and saying that "coverage includes all costs and expenses . . . incurred" in defending against the FDIC. They also alleged that the FDIC had asserted a claim against them on behalf of third-party creditors and depositors. Eventually, the FDIC got involved in this suit, filing a complaint in intervention. That complaint accused the directors and officers of violating their fiduciary duties to Westernbank, causing over $176 million in damages to the bank. The complaint also stressed that the FDIC had "succeeded to all of the rights and assets of Westernbank, including its rights and claims against its former officers and directors, and its rights, interests and claims in and to the policies against Chartis under" Puerto Rico's direct-action statute. See 26 L.P.R.A. § 2003 (declaring that "[a]ny individual sustaining damages and losses" may sue an insurance company directly without joining the named insured, provided the suit is pursued in Puerto Rico).

The FDIC then promptly removed the entire case to federal court. See 12 U.S.C. § 1819(b)(2)(B). It amended its complaint to bring more directors and officers (as well as their spouses and conjugal partners) into the case and to add cross claims against them, too. This pleading sounded a familiar theme: that the FDIC had sued in its capacity as Westernbank's receiver and that the

-6-

directors and officers had breached their fiduciary duties, resulting in the bank's loss of over $176 million. But the FDIC also estimated there that the bank's closing could result in the federal deposit-insurance fund's losing over $4 billion.

Chartis fired back with a motion to dismiss all claims brought against it by the directors and officers and by the FDIC. See Fed. R. Civ. P. 12(b)(6). What matters for our purposes is that Chartis asserted again that because the FDIC was pursuing the directors and officers "on behalf of or in the right of" Westernbank, there is no coverage under the insured-versus-insured exclusion and so their coverage claim should be jettisoned. The directors and officers opposed the dismissal motion, arguing (at the risk of oversimplification) that a clear "majority of courts" refuse to stretch the insured-versus-insured exclusion "to include the FDIC."

Believing that there is at least a "remote possibility" of coverage, the directors and officers also moved the judge to order Chartis to advance their defense costs.[3] "This is not a preliminary injunction motion," they wrote in support of their motion. But they were quick to note that (a) they would be irreparably harmed if their motion failed, because many of them are

---

[3] Helpfully, the parties agree that Puerto Rico's "remote possibility" standard applies here. And we accept that concession. See, e.g., Manganella v. Evanston Ins. Co., 702 F.3d 68, 72 (1st Cir. 2012); Kali Seafood, Inc. v. Howe Corp., 887 F.2d 7, 8 (1st Cir. 1989).

-7-

"elderly," "unemployed," "retired," and "living on fixed incomes," and so cannot shoulder the defense costs; that (b) Chartis's duty to advance defense costs to them is plain as day; and that (c) the public's interest in making sure that insurers keep their commitments and that insureds get what they paid for cannot be questioned. Undaunted, Chartis opposed the cost-advancement motion, insisting that the insured-versus-insured exclusion controls and bars coverage. And no coverage, the argument continued, means no obligation to advance defense costs — because costs tied to an excluded claim are not "covered Defense Costs."

The FDIC chimed in, moving without opposition for leave to file a second amended complaint in intervention, see Fed. R. Civ. P. 15(a) — a motion the judge granted. As best we can tell, the big difference between the first and second amended complaints is the latter's saying that the FDIC, as receiver,

> succeeded to all rights, claims, titles, powers, privileges, and assets of Westernbank and its stockholders, members, account holders, depositors, officers, or directors of Westernbank with respect to the institution and the assets of the institution, including the right to bring this action against the former officers and directors of Westernbank.

As support for its claim, the FDIC cited 12 U.S.C. § 1821(d)(2)(A)(i). That provision — one of many in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

("FIRREA," for now on)[4] — says that the FDIC "shall, as . . . receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution."

Not surprisingly, the directors and officers and Chartis responded by filing separate motions to dismiss the FDIC's second amended complaint. See Fed. R. Civ. P. 12(b)(6). Among other arguments, the directors and officers claimed that they had not acted in a grossly negligent fashion. Chartis, on the other hand, raised the same insured-versus-insured argument as before. Also not surprisingly, the FDIC opposed the dismissal motions. And responding to Chartis's insured-versus-insured theory, the FDIC said that "overwhelming case authority" establishes that this exclusion does "not apply to entities like the FDIC."

Taking up the cost-advancement matter first, the judge granted the directors and officers' motion in an electronic docket entry that said:

> ORDER GRANTING . . . Motion for Miscellaneous Relief (advance defense costs). PR law requires insurers to advance defense costs if there is even a remote possibility that a claim ultimately will be covered. This ruling is without prejudice of Chartis eventually being entitled to repayment.

---

[4] See Pub. L. No. 101-73, 103 Stat. 183 (1989).

-9-

The judge denied Chartis's motion to reconsider that order, too. And he then denied all motions to dismiss the FDIC's second amended complaint. As for Chartis's all-encompassing dismissal motion (the only one that matters somewhat here, because it touched on the insured-versus-insured issue), the judge said that the insured-versus-insured exclusion barred the FDIC from suing on behalf of Westernbank's members, officers, and directors, plus also Westernbank's shareholders (consisting only of W Holding, a party to the case). But because the FDIC also sued on behalf of account holders, depositors, and the drawn-down FDIC-insurance fund, the judge concluded that the FDIC's claims fell outside the insured-versus-insured exclusion.[5]

The parties' frenetic motion practice continued, however. Here is one example. The directors and officers later moved for sanctions against Chartis, citing Rule 44.1 of the Puerto Rico Rules of Civil Procedure — a rule that authorizes the "payment of a sum for attorneys' fees" if "any party or its lawyer has acted obstinately or frivolously." In their view, Chartis's no-remote-possibility-of-coverage position was nothing short of obstinate or frivolous. Essentially crying "gotcha," they spotlighted the position Chartis took in a substantially similar case, Bradford v. Gibraltar Nat'l Ins. Co., No. CV2010-1145 (Ark. Cir. Ct. 13th Div.

---

[5] At oral argument Chartis's lawyer conceded that the reasons the judge gave for denying the dismissal motion help explain why he granted the cost-advancement motion.

an. 18, 2012). There, Chartis had no problem advancing defense costs to directors of a defunct company, despite an insured-versus-insured exclusion. What Chartis did in <u>Bradford</u>, they added, "amounts to an admission" that the FDIC's claims are "covered" and that the exclusion does not apply. And they sought attorneys' fees from Chartis as a penalty for its litigating the cost-advancement question here. Chartis responded that its insured-versus-insured argument in the current case constitutes a reasoned position based on a "novel" issue that is "reasonably debatable." Chartis also claimed that the exclusion in <u>Bradford</u> looks nothing like the one at issue here. So, Chartis reasoned, no court could find its actions sanctionable. But the judge noted that there are cases (nothing binding) going both ways on whether the insured-versus-insured exclusion applies to situations like ours. And because some caselaw points to coverage, the judge found that Chartis's no-remote-possibility-of-coverage notion represented the height of obstinacy. Consequently, he granted the directors and officers' sanctions motion, awarding them the costs that they incurred in fighting for the advancement.

Which brings us at last to Chartis's appeal of the cost-advancement order — an appeal that pivots around two basic questions: Do we have jurisdiction to hear the parties? And, if so, did the judge bungle the cost-advancement ruling? We answer

"yes" to the first question and "no" to the second, for the reasons we now explain.

**OUR TAKE ON THE CASE**

**(1)**
**Appealability**

The directors and officers think we have no authority over this matter because, they say, the cost-advancement edict is not an appealable order, given that there is no final judgment disposing of all claims against all parties.  Like Chartis, we think the opposite is true.

Normally, only final judgments are appealable.  See Morales Feliciano v. Rullán, 303 F.3d 1, 6 (1st Cir. 2002) (citing 28 U.S.C. § 1291).  An exception exists, however, for orders granting injunctions.  See 28 U.S.C. § 1292(a)(1).[6]  And the judge's cost-advancement order certainly seems to fit the bill.  For sure, the judge did not label his ruling an "injunction" — perhaps because the directors and officers said that they were not

_____

[6] The following excerpt from § 1292(a)(1) should be enough to give the reader a flavor of that provision:

(a) . . . [T]he courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts . . ., or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions except where a direct review may be had in the Supreme Court[.]

-12-

asking for one.[7]  But an order's character does not depend on what the judge calls it — no, its "nature" depends on "its operative terms and effects," we recently said.  See Fryzel v. Mortg. Elec. Registration Sys., Inc., 719 F.3d 40, 43 (1st Cir. 2013) (Souter, J.).  With this in mind, and knowing what makes an injunction an injunction, we see that the order here is aimed at a particular party (Chartis), is enforceable by contempt, and provides some of the relief (costs) that the directors and officers seek in the case.  Given these characteristics, the edict is an injunction, see, e.g., id. (citing Bogosian v. Woloohojian Realty Corp., 923 F.2d 898, 901, 903-04 (1st Cir. 1991) (Breyer, J.)) — a mandatory preliminary injunction, actually, because it "disturb[s], rather than preserve[s], the status quo" by requiring defense-cost advancements, see United Steelworkers of Am., AFL-CIO v. Textron, Inc., 836 F.2d 6, 8 (1st Cir. 1987) (Breyer, J.).  And that means

---

[7] Do not forget, though, how their cost-advancement motion played up the "irreparable and increasing" financial "harm" they face in defending themselves against the FDIC.  Many are unemployed, elderly, and on fixed incomes, or so they wrote.  And "[i]t is uncertain," they added ominously, "how" they can come up with the cash to fend off the FDIC "if Chartis is not ordered to advance the cost of their defense."  Also, they alleged that Chartis had a clear duty to pay (subject to recoupment if the judge later found no coverage).  They alleged, too, that the public had an interest in ensuring insurers honor their contractual obligations and that insureds get the benefit of the insurance they purchased.  These are things an injunction seeker would stress, as we will soon see.  See, e.g., Braintree Labs., Inc. v. Citigroup Global Mkts., Inc., 622 F.3d 36, 40 (1st Cir. 2010).

-13-

the order is immediately appealable regardless of finality.  <u>See</u>,
<u>e.g.</u>, <u>Fryzel</u>, 719 F.3d at 43; <u>Bogosian</u>, 923 F.2d at 901, 903-04.

So, in other words, we have jurisdiction.  To the merits,
then.

**(2)**
**The Merits**

Both sides bombard us with arguments.  But before
entering the fray, we pause to highlight some important legal
principles.

(a)
<u>Injunction Basics</u>

Whether a mandatory preliminary injunction should issue
typically depends on the exigencies of the situation, taking into
account four familiar factors:  the moving party's likelihood of
success on the merits, the possibility of irreparable harm absent
an injunction, the balance of equities, and the impact (if any) of
the injunction on the public interest.  <u>See</u>, <u>e.g.</u>, <u>Braintree Labs.,
Inc.</u>, 622 F.3d at 40-41.  These factors are not all weighted
equally, however.  <u>See</u>, <u>e.g.</u>, <u>Ross Simons of Warwick, Inc.</u> v.
<u>Baccarat, Inc.</u>, 102 F.3d 12, 16 (1st Cir. 1996).  Truth be told,
"[l]ikelihood of success is the main bearing wall" of this
"framework."  <u>Id.</u>; <u>accord</u> <u>Corporate Techs., Inc.</u> v. <u>Harnett</u>, 731
F.3d 6, 10 (1st Cir. 2013).  When it comes to the merits, Chartis
stakes everything on persuading us that the directors and officers
are not likely to succeed on their coverage claim and so should not

-14-

get cost advancements.  Given this development, we need not concern ourselves with the other elements of the four-part test.  See, e.g., Corporate Techs., Inc., 731 F.3d at 10-13 (taking a similar tack in a similar situation); Ross-Simons of Warwick, Inc., 102 F.3d at 16 (ditto).

As for our standard of review, the Federal Reporter is chock full of cases saying how we scan preliminary-injunction decisions for "abuse of discretion."  See, e.g., Diálogo v. Santiago-Bauzá, 425 F.3d 1, 3 (1st Cir. 2005); Langlois v. Abington Housing Auth., 207 F.3d 43, 47 (1st Cir. 2000); Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 & n.1 (1st Cir. 1998).  But the standard depends on the issue under review, obviously.  See, e.g., Diálogo, 425 F.3d at 3; Langlois, 207 F.3d at 47; Ocean Spray Cranberries, Inc., 160 F.3d at 61 n.1.  For example, within this rubric, we review questions of fact for clear error, issues of law de novo, and judgment calls with deference.  See, e.g., Diálogo, 425 F.3d at 3; Langlois, 207 F.3d at 47; Ocean Spray Cranberries, Inc., 160 F.3d at 61 n.1.  Of course, as the appealing party, Chartis bears the burden of showing reversible error.  See, e.g., Ross-Simons of Warwick, Inc., 102 F.3d at 16; Gately v. Massachusetts, 2 F.3d 1221, 1225 (1st Cir. 1993).

(b)
Cost-Advancement Basics

Puerto Rico law holds that an insurance company must advance defense costs if a complaint against an insured alleges claims that create even a "remote possibility" of coverage. See Cuadrado Rodríguez v. Fernández Rodríguez, No. KLCE200601588, 2007 WL 1577940, at *5 (TCA Mar. 30, 2007) (certified translation provided by the parties).[8] Think about that for a second. Not an "actuality" of coverage. Not even a "probability" of coverage. No, a mere "possibility" of coverage will do — regardless of how "remote" it may be. A pretty low standard, indeed. On top of that, courts must read the complaint's allegations "liberal[ly]" when doing a remote-possibility check. See Triple-S Mgmt. Corp. v. Am. Int'l Ins. Co. of P.R., Nos. KLAN0900022, KLCE0900025, 2009 WL 2419937, at *13 (TCA May 19, 2009) (certified translation provided by the parties); see also Cuadrado Rodríguez, 2007 WL 1577940, at *6. And the allegations need not be "perfect," either, to trigger the insurer's duty to advance defense costs. Cuadrado Rodríguez, 2007 WL 1577940, at *6. Also, any doubt about an insurer's advancement obligation "must be resolved in the insured's favor." See Pagán Caraballo v. Silva Delgado, 22 P.R. Offic. Trans. 96, 103 (P.R. 1988); see also Cuadrado Rodríguez, 2007 WL 1577940, at *6.

---

[8] Cuadrado Rodríguez is a duty-to-advance case. But the court looked to duty-to-defend cases, too, in resolving the advancement issue. See id. (discussing Fernández v. Royal Indem. Co., 87 D.P.R. 859, 863 (1963)).

Seemingly what animates these rules "is that the purpose of insurance policies is <u>to provide protection for the insured</u>." <u>See Triple-S Mgmt. Corp.</u>, 2009 WL 2419937, at *12 (emphasis in original); <u>see</u> <u>also</u> <u>Cuadrado Rodríguez</u>, 2007 WL 1577940, at *5.

(c)
<u>Applying These Basics</u>

Looking at the cost-advancement issue through the prism of preliminary-injunction principles makes an already insured-friendly situation under Puerto Rico law friendlier still. At this stage, you see, the directors and officers need not show a "certainty" of a "remote possibility" of coverage. On the contrary, only a "likelihood" of a "remote possibility" of coverage is required. <u>Cf.</u> <u>generally</u> <u>Narragansett Indian Tribe</u> v. <u>Guilbert</u>, 934 F.2d 4, 6 (1st Cir. 1991) (talking in terms of "<u>probability</u> of success" (emphasis added)).

Chartis pins its reversal hopes on the strength of the following six-step argument (which is basically a reprise of its position in the district court). Step one: The policy only obliges Chartis to advance the costs of defending against "covered" claims. Step two: The policy's insured-versus-insured exclusion blocks coverage for claims "brought . . . on behalf of or in the right of" Westernbank. Step three: There would be no coverage if Westernbank had sued its directors and officers like the FDIC has, because that scenario would activate the insured-verus-insured exclusion. Step four: Having slipped into Westernbank's shoes as

-17-

its receiver, the FDIC must be suing the directors and officers "on behalf of or in the right of" Westernbank. Step six: Add this all up and there is no remote possibility of a covered claim and thus no duty to advance defense costs.

Chartis's theory has a certain appeal, at least at first glance. But it is not persuasive, for the simplest of reasons: It gives lip service — and no more — to the words "remote possibility" in the pertinent phrase "remote possibility of coverage." And it ignores that the procedural posture of the case only requires a mere <u>likelihood</u> of a remote possibility of coverage to jump-start the cost-advancement duty. Viewed in the proper light, the flaws in Chartis's thesis stand out in bold relief.

Let's zero in on step four of Chartis's six-step argument: that the FDIC is <u>only</u> suing on behalf of or in the right of Westernbank — that it simply donned the bank's wingtips, if you will. Quoting from the FDIC's second amended complaint, Chartis writes that the FDIC alleges that it, "as Receiver of Westernbank," seeks millions in "damages caused by the gross negligence" of the bank's former directors and officers. But remember, the FDIC did more than allege that it had succeeded to Westernbank's rights. It also alleged that it had succeeded to the rights of Westernbank's depositors and account holders — rights that included the right to "bring this action." And it alleged, too, that it was suing to recover money the FDIC-insurance fund had shelled out after the

bank had shut down. Eyeing that pleading liberally, see Triple-S Mgmt. Corp., 2009 WL 2419937, at *13, while knowing also that pleading perfection is not required, see Cuadrado Rodríguez, 2007 WL 1577940, at *6, we think that these allegations make it likely possible — even if only remotely so — that the FDIC is suing on these non-insureds' behalf.

Relatedly, Chartis argues — a unique argument, to say the least — that what role the FDIC has assumed is set when it makes its first claim. And, Chartis writes, the FDIC did not say in its demand letter to the directors and officers that it is pursuing claims on behalf of or in the interest of Westernbank's depositors and account holders or the FDIC's run-down insurance fund. But Chartis cites no cases holding that the FDIC must disclose its representative capacities and interests in any demand dispatch. Ultimately, nothing Chartis advances on this front shows there is no likelihood of even the remotest possibility that the FDIC sued on behalf of non-insureds. Enough said on that.

Ever persistent, both sides continue battling over the remote-possibility-of-coverage question, citing a corps of cases to support their competing positions on the effect an insured-versus-insured exclusion has in circumstances like the present. None binds us, however — on that everyone agrees.

Chartis, for example, musters decisions involving the FDIC and bank directors and officers where, it says, courts did

apply the insured-versus-insured exclusion.[9] The courts' rationale, Chartis tells us, is that the FDIC stands in the failed bank's stead, so that any FDIC-asserted claim is a claim on behalf of the bank, meaning the fought-over exclusion holds sway.

Wait a minute, our directors and officers respond, in those cases — unlike this one — the FDIC either did not sue any bank directors or officers or chose not to assert any claims on behalf of non-insureds. And going on the offensive, they then march out cases that, they say, hold the insured-versus-insured exclusion inapplicable when the FDIC (acting as a defunct bank's receiver) sues as a creditor itself, on behalf of other creditors, or as a subrogee to the rights of the depositors.[10] A big part of

---

[9] See St. Paul Mercury Ins. Co. v. Miller, No. 12-CV-0225, 2013 WL 4482520 (N.D. Ga. Aug. 19, 2013); Hyde v. Fid. & Deposit Co. of Md., 23 F. Supp. 2d 630 (D. Md. 1998); Mt. Hawley Ins. Co. v. FSLIC, 695 F. Supp. 469 (C.D. Cal. 1987); Evanston Ins. Co. v. FDIC, No. 88-CV-407, 1988 U.S. Dist. LEXIS 16263 (C.D. Cal. 1988). A quick word about St. Paul Mercury Insurance Co. Chartis gave us that case by way of a post-briefing motion for leave to cite supplemental authority. The directors and officers countered with a motion to strike. An order of the court construed the motion to supplement as a Rule 28(j) letter and the motion to strike as a response. See Fed. R. App. P. 28(j). Yet even so construed, that response still asks that we strike Chartis's filing. We deny that request.

[10] See, e.g., Progressive Cas. Ins. Co. v. FDIC, 926 F. Supp. 2d 1337 (N.D. Ga. 2013); Am. Cas. Co. of Reading, Pa. v. FDIC, 791 F. Supp. 276 (W.D. Okla. 1992); FDIC v. Zaborac, 773 F. Supp. 137 (C.D. Ill. 1991), aff'd on other grounds sub nom. FDIC v. Am. Cas. Co. of Reading, Pa., 998 F.2d 404 (7th Cir. 1993); FDIC v. Am. Cas. Co. of Reading, Pa., 814 F. Supp. 1021 (D. Wyo. 1991); Am. Cas. Co. of Reading, Pa. v. Baker, 758 F. Supp. 1340 (C.D. Cal. 1991), aff'd on other grounds, 22 F.3d 880 (9th Cir. 1994); Fid. & Deposit Co. of Md. v. Zandstra, 756 F. Supp. 429 (N.D. Cal. 1990); Branning v.

what drove those decisions, they write, is that the FDIC can do much more than jump into a failed bank's boots, because the FIRREA invests the FDIC with great power, giving it not only all the rights and privileges of the departed bank but also those of its depositors, creditors, and account holders (among others), too.

Not to be outdone, Chartis snipes at the directors and officers' cases. Some are too "conclusory" to be helpful, Chartis proclaims. Others, it adds, involve policies containing insured-versus-insured exclusions significantly different from the one here.

What we have is a classic battle of dueling caselaw. But such a state of affairs hurts Chartis. With no controlling authority on whether an insured-versus-insured exclusion applies to the FDIC in a situation like ours; with non-binding cases pointing in different directions; and with our obligation to resolve any doubts in the insured's favor, see Pagán Caraballo, 22 P.R. Offic. Trans. at 103 — Chartis's suggestion that there is zero likelihood of a remote possibility of coverage falls flat. Keep in mind (and we cannot stress this enough): likelihood — not certainty — is the name of the game, and possibility — not actuality or probability — suffices, no matter how remote that possibility is. And that

---

CNA Ins. Cos., 721 F. Supp. 1180 (W.D. Wash. 1989); Am. Cas. Co. of Reading, Pa. v. FSLIC, 704 F. Supp. 898 (E.D. Ark. 1989); Am. Cas. Co. of Reading, Pa. v. FDIC, 713 F. Supp. 311 (N.D. Iowa 1988); FDIC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 630 F. Supp. 1149 (W.D. La. 1986).

standard is met here. So the judge's cost-advancement edict stands. But we add — lest anyone be confused — that having lost the likelihood-of-success skirmish, Chartis may still "win" the coverage "war at a succeeding trial on the merits." See Narragansett Indian Tribe, 934 F.2d at 6; see also Univ. of Texas v. Camenisch, 451 U.S. 390, 394 (1981) (cautioning that one should not "equate[] 'likelihood of success' with 'success'").

## FINAL WORDS

For the reasons cast above, we affirm the challenged order. Also, we award the directors and officers their costs on appeal. See Fed. R. App. P. 39(a)(2).

So Ordered.